**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RICHARD WALTER LANGENDORF,**

                **Plaintiff,**

  vs.                                            5:13-cv-00971
                                                        (MAD)
**CAROLYN W. COLVIN,**
*Acting Commissioner of Social Security*,

                **Defendant.**
_____

**APPEARANCES:**                             **OF COUNSEL:**

**WALTER D. KOGUT, P.C.**                **WALTER D. KOGUT, ESQ.**
7000 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**     **DAVID B. MYERS, ESQ.**
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      On August 13, 2013, Plaintiff commenced this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the Commissioner of Social Security's decision to deny Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

Plaintiff filed an application for DIB on July 2, 2007, alleging a disability onset date of May 28, 2007. *See* Dkt. No. 8, Administrative Record ("R."), at 205-14.[1] This application was denied on September 11, 2007. *Id.* at 127-28. Upon reconsideration, Plaintiff's claim was again denied on November 13, 2007. *Id.* at 136-38. On the same date, Plaintiff filed an application for SSI. *See id.* at 110. Plaintiff then requested a hearing and appeared with his counsel before Administrative Law Judge ("ALJ") Rebecca LaRiccia on December 22, 2009. *See id.* at 59-102. On January 26, 2010, ALJ LaRiccia issued a decision denying Plaintiff's applications. *Id.* at 107-23. Plaintiff then requested review by the Appeals Council. *Id.* at 170. The Appeals Council granted Plaintiff's request for review, vacated ALJ LaRiccia's hearing decision based on new and material evidence and ALJ LaRiccia's failure to assess the severity of Plaintiff's psychological disorders, and remanded the case. *Id.* at 124-26. Upon remand, the Appeals Counsel instructed the ALJ to consider a new medical source statement from examining psychologist Dr. Norman J. Lesswing and to evaluate the severity of Plaintiff's anxiety and depression. *Id.* at 126.

On August 12, 2011, Plaintiff appeared with his counsel for a hearing before ALJ John Ramos. *See id.* at 33-58. ALJ Ramos issued a decision denying Plaintiff's applications on August 29, 2011. *Id.* at 15-32. Plaintiff subsequently requested review by the Appeals Council and was denied such review on June 26, 2013, making ALJ Ramos's decision the final decision of the Commissioner of Social Security. *See id.* at 1-11.

Presently before the Court are the parties' respective motions for judgment on the pleadings. *See* Dkt. No. 14; Dkt. No. 16.

---

[1] The Court notes that the record contains discrepancies regarding the filing date of Plaintiff's DIB and SSI applications, but the discrepancies are immaterial because timeliness is not at issue in this case. *See* R. at 18, 110, 205-14, 246.

## II. BACKGROUND

Plaintiff was born on March 4, 1954, and was fifty-seven years old at the time of the second administrative hearing on August 12, 2011. *See* R. at 35, 207. Plaintiff is married and lives with his wife. *See id.* at 55. He completed high school through a special education program for students with low IQs. *See id.* at 63, 442. From late 2007 through the date of the hearing, Plaintiff worked part-time delivering newspapers for various publishers, most recently the Penny Saver. *See id.* at 38-39, 64-65. Plaintiff testified that his job with the Penny Saver required him to assemble newspaper inserts and then deliver the inserts to houses along a designated route. *See id.* at 38-39. Prior to delivering newspapers, Plaintiff worked as a security guard for numerous companies, including as an armed guard for Allied Barton. *Id.* at 39-40. Additionally, Plaintiff previously worked as a cleaner for various janitorial services, a bottle washer at a water bottling facility, and a dining room porter at a hotel. *See id.* at 39-42. Plaintiff testified that he had "at least twenty" jobs over the fifteen years prior to the hearing. *Id.* at 54.

Plaintiff alleges that he suffers from borderline intellectual functioning, a personality disorder, anxiety, and depression. *See* Dkt. No. 14 at 2-4. In 1996, in connection with a Family Court case, Dr. Woodard, a licensed clinical psychologist, examined Plaintiff. *See id.* at 440. Dr. Woodard testified in a later Family Court proceeding regarding Plaintiff's fitness as a parent to his two daughters that Plaintiff had "'little, if any insight into his own motivations and, at the same time, very little understanding or awareness of the consequences of his own behavior as it affects others.'" *Id.* Dr. Woodard further testified that Plaintiff was "'likely to have difficulties in interpersonal relationships, particularly with becoming emotionally involved with others.'" *Id.* at 439-40. Dr. Woodard's testimony also indicated that he believed Plaintiff would be "a poor candidate for psychotherapy." *Id.* at 439. In the same proceeding, William Leuszler, a social

worker with a master's degree in social work, testified that he counseled Plaintiff briefly in 1998 and that he discontinued Plaintiff's therapy because he "was of the opinion that therapy would not have any effect on [Plaintiff]'s behavior, and therefore, it did not make sense to continue." *Id.* at 441.

On September 9, 2007, Dr. Michael Greenberg, a licensed psychologist, examined Plaintiff. *See id.* at 448. Dr. Greenberg administered the Wechsler Adult Intelligence Scale-III ("WAIS-III") to Plaintiff. *Id.* at 449. Plaintiff's results indicated a full scale IQ of 72, verbal IQ score of 73, and performance IQ score of 75. *Id.* Dr. Greenberg noted that Plaintiff's mood was depressed and that his attention, concentration, vocabulary, abstract thinking, verbal reasoning, and awareness of social norms were impaired. *Id.* Dr. Greenberg diagnosed Plaintiff with borderline intellectual functioning, dysthymic disorder, and alcohol dependence in remission. *Id.* at 450. He also opined that Plaintiff can handle his funds. *Id.*

In 2008, the New York State Office of Vocational and Educational Services for Individuals with Disabilities ("VESID") referred Plaintiff to Dr. Thomas Lazzaro, a licensed psychologist, for an evaluation pursuant to Plaintiff's efforts to establish eligibility for VESID's job training services. *See* Dkt. No. 14 at 9-10; R. at 479-83. Dr. Lazzaro examined Plaintiff on August 28, 2008. R. at 480. Dr. Lazzaro administered the Wechsler Abbreviated Scale of Intelligence ("WASI") to Plaintiff, the results of which indicated a verbal IQ score of 73, a performance IQ score of 91, and a full scale IQ score of 79. *Id.* Dr. Lazzaro also administered a wide range achievement test to Plaintiff, which demonstrated that Plaintiff had a 3.2 grade reading level. *Id.* at 481. Additionally, Dr. Lazzaro administered the Rorschach Inkblot Test to Plaintiff. *Id.* at 482. Dr. Lazzaro indicated that the test revealed Plaintiff's "anxiety and low self-esteem." Dr. Lazzaro further observed that

4

> the situationally related stresses [Plaintiff] feels are making such demands on his adaptive capacities that he is more vulnerable than most people to becoming acutely upset and even disorganized. . . . His projective responses also showed that [Plaintiff] has a potentially maladaptive style of experiencing and expressing emotion in which he exerts more stringent control over his feelings than do most people. . . . Consequently, he has become an emotionally reserved individual who has difficulty relaxing, being spontaneous, showing his feelings, and relating to others on a casual and informal basis.

*Id.* at 482-83.  However, Dr. Lazzaro also noted that Plaintiff was "capable of attending to his experiences in a reasonably open and flexible manner," "had about as much interest in other people as would be expected," and "[gave] evidence of the adaptive capacity to establish mutually supportive relationships with other people."  *Id.* at 483.  Dr. Lazzaro concluded that Plaintiff likely would not benefit from remedial educational work and was best suited for a supported employment program.  *Id.*

On June 1, 2010, Dr. Norman Lesswing, a licensed clinical psychologist, examined Plaintiff at the request of Plaintiff's counsel.  *See id.* at 487-92.  Dr. Lesswing noted that Plaintiff's mood was dysphoric, that his manner was "nervous and frankly odd," and that Plaintiff "exhibited marginal hygiene and grooming."  *Id.* at 487.  Dr. Lesswing administered the Minnesota Multiphasic Personality Inventory-2 to Plaintiff.  *Id.* at 490.  From this test, Dr. Lesswing concluded that Plaintiff experienced depression, anxiety, hypersensitivity, and resentment.  *Id.*  Dr. Lesswing observed that Plaintiff "tends to be bitter, resentful, quick to take offense and feel victimized, and prone to interpret criticism as cruel and hostile.  He may overreact to imagined slights and likely has a history of maltreatment."  *Id.*  Dr. Lesswing opined that "[i]t is likely that [Plaintiff] is viewed by others as odd, peculiar, or eccentric."  *Id.* at 491.  Dr. Lesswing also administered the Millon Clinical Multiaxial Inventory - II test to Plaintiff.  *Id.*  Dr. Lesswing observed from this testing that Plaintiff had "an intense mistrust of others and a consequent

tendency to withdraw from social relationships." *Id.* Dr. Lesswing ultimately concluded that Plaintiff

> shows signs of an Axis II personality disorder, involving Schizotypal, Avoidant, and Schizoid traits and features. As a result, he will seem odd or strange to others, has poor coping skills, remains mistrustful and alienated, does not get along well with people, and tends to anxiously withdraw, with an anticipation that he will be rejected. Consequently, he will have difficulty working with people, interfacing with the public, and managing supervisory demands. He is anxious and depressed.

*Id.* at 492. Dr. Lesswing's report included a "Medical Source Statement" with his opinion that Plaintiff had marked or extreme limitations in abilities related to responding appropriately to supervisors, co-workers, and the general public, including in maintaining socially appropriate behavior, accepting instructions and responding appropriately to criticism, and responding appropriately to work pressures. *Id.* at 495-97.

On September 10, 2007, Dr. Martha Putney, a State agency psychologist, performed a psychiatric review and mental residual functional capacity ("RFC") assessment of Plaintiff based on his records. *See id.* at 451-68. Dr. Putney's report does not indicate the specific records on which she relied. *See id.* Dr. Putney concluded that Plaintiff had mild restriction of activities of daily living and mild difficulties in maintaining social functioning. *Id.* at 461. Dr. Putney noted that Plaintiff "gets along adequately with others in the workplace" and "has been able to work for many years." *Id.* at 463. Dr. Putney's mental RFC assessment indicated that Plaintiff was not significantly limited in any ability corresponding to social interaction or adaptation. *Id.* at 466. Dr. Putney further indicated that Plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, and maintain attention and concentration for extended periods was moderately limited. *Id.* at 466. Dr. Polizoes Polizos, a State agency psychiatrist,

reviewed and agreed with Dr. Putney's assessment in a medical consultant's review form dated November 11, 2007. *Id.* at 473-77.

## III. DISCUSSION

**A.     Standard of Review**

For purposes of SSI and DBI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 1382(c)(3)(A). The Commissioner utilizes the following five-step analysis in evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. The burden of proving disability, encompassing the first four of these steps, is on the claimant. The burden of proving the fifth step is on the [Commissioner].

*Bush v. Shalala*, 94 F.3d 40, 44-45 (2d Cir. 1996) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 722-23 (2d Cir. 1983)) (internal quotation marks and emphasis omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3);

7

*Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Record to ascertain whether the correct legal standards were applied and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     The ALJ's Decision**

At step one of the sequential evaluation, ALJ Ramos found that Plaintiff had not engaged in substantial gainful activity since May 28, 2007, the alleged disability onset date. R. at 20. At the second step, the ALJ determined that Plaintiff had the severe impairment of borderline intellectual functioning. *Id.* at 20-21. At this step, the ALJ considered Plaintiff's personality disorder, depression, and anxiety, and concluded that they were not severe impairments. *Id.* at 21.

8

At step three of the analysis, the ALJ found that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of any impairment listed in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 21-23. The ALJ then determined that Plaintiff had the RFC to perform work at all exertional levels, to understand, read, and follow simple instructions, to perform simple tasks and maintain concentration and attention for such tasks, to regularly attend to a routine and maintain a schedule, to relate to and interact appropriately with others to the extent necessary to carry out simple tasks, and to handle reasonable levels of simple, repetitive work-related stress. *Id.* at 23-25. At the fourth step, the ALJ concluded that Plaintiff was able to perform his past relevant work as a porter and bottle washer as actually and generally performed. *Id.* at 26. Although the ALJ was not required to address step five once he found that Plaintiff was able to perform past relevant work, the ALJ nonetheless alternatively concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* at 26-27. Therefore, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 27.

**C.    Analysis**

In his motion for judgment on the pleadings, Plaintiff argues that the ALJ committed reversible error in failing to find that his personality disorder impairments were severe. *See* Dkt. No. 14 at 7-20. Specifically, Plaintiff argues that the ALJ improperly assigned significant weight to the opinions of non-examining State agency consultants and lesser weight to the opinions of the examining psychologists, Drs. Woodard, Greenberg, Lazzaro, and Lessing, and treating social worker, William Leuszler. *See id.* at 12-20. Plaintiff argues that the ALJ's determination that Plaintiff's personality disorder impairments are not severe and RFC determination are therefore

9

not supported by substantial evidence. *See id.* at 8-12. Defendant asserts that the ALJ properly evaluated the medical opinion evidence under the Social Security Regulations (the "Regulations") and that the ALJ's finding that Plaintiff's personality disorder was not a severe impairment and RFC determination are supported by substantial evidence. *See* Dkt. No. 16 at 6-17.

Pursuant to the Regulations, in making a disability determination, an ALJ must evaluate every medical opinion, regardless of its source. 20 C.F.R. § 404.1527(b)-(c); *Bennett v. Astrue*, No. 07-CV-0780, 2010 WL 3909530, *6 (N.D.N.Y. Sept. 30, 2010). Generally, the Commissioner "give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1); *see also Pogozelski v. Barnhart*, No. 03 CV 2914, 2004 WL 1146059, *13 (E.D.N.Y. May 19, 2004) ("[O]pinions of nonexamining sources [are] entitled to even less weight than an examining consultative physician's opinion" (citing *Gonzalez v. Apfel*, 113 F. Supp. 2d 580, 589 (S.D.N.Y. 2000)). The Regulations further provide that

> [t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the Commissioner] will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with [the claimant], the weight [the Commissioner] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. [The Commissioner] will evaluate the degree to which these opinions consider all of the pertinent evidence in [the claimant's] claim, including opinions of treating and other examining sources.

*Id.* at § 404.1527(c)(3).

"The ALJ is permitted, 'in appropriate circumstances' to grant greater weight to the opinions from non-examining sources than to those from examining sources." *Titus v. Astrue*, No. 08-CV-00227, 2010 WL 10827099, *7 (N.D.N.Y. June 14, 2010) (quoting SSR 96-6p, Policy

Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence, 1996 WL 374180, *3 (Soc. Sec. Admin. July 2, 1996)). However,

> the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

SSR 96-6p, 1996 WL 374180, at *2. Accordingly, reliance on opinions from non-examining sources is "particularly appropriate where the opinions . . . are supported by the weight of the evidence." *Bennett*, 2010 WL 3909530, at *7.

In the present matter, Plaintiff first claims that the ALJ erred by ignoring the opinions of Dr. Woodard, who examined Plaintiff in 1996, and William Leuszler, who treated Plaintiff for a brief period in 1998. *See* Dkt. No. 14 at 15-16. At step two of the sequential disability analysis, the ALJ addressed the fact that "[i]n the 1990s [Plaintiff] was reportedly given diagnoses of adjustment disorder and depression, and received counseling." *Id.* The ALJ then concluded that any such impairments were not severe, in part because Plaintiff had not received any mental health treatment or medication since the alleged disability onset date. *Id.* Plaintiff argues that Leuzsler's and Dr. Woodard's reported opinions that therapy would not be effective for Plaintiff

11

prohibited the ALJ from considering lack of treatment as evidence that Plaintiff's psychological impairments were not severe. *See* Dkt. No. 14 at 15-16.

However, the only evidence before the ALJ regarding Dr. Woodard and Leuzsler's opinions was a third-hand description of Dr. Woodard and Leuszler's testimony at Plaintiff's parental rights hearing from an unidentified source. *See* R. at 438-41. The record contains no evidence of the bases for these opinions or discussion of how the opinions were reached. *See id.* Accordingly, despite the fact that Dr. Woodard reportedly examined Plaintiff and Leuszler reportedly counseled Plaintiff, the Court cannot find error in the ALJ's decision to assign their opinions little to no weight.

Plaintiff also contends that the ALJ erred in providing "some weight" to the opinion of examining psychologist Dr. Greenberg and "little weight" to the opinions of examining psychologists Drs. Lazzaro and Lesswing while assigning "significant weight" to the opinions of non-examining State consultants Drs. Putney and Polizos. *See* Dkt. No. 14 at 13-15, 16-20. The ALJ assigned the opinions of State psychologist Dr. Putney and State psychiatrist Dr. Polizos "significant weight" because of "their review of [Plaintiff]'s longitudinal record, their programmatic knowledge, and the support found in [Plaintiff]'s activities of daily living and work activities." R. at 24. In contrast, the ALJ gave Dr. Greenberg's opinion "some weight" because Dr. Greenberg examined Plaintiff on only one occasion. *Id.* Further, the ALJ gave Drs. Lazzaro and Lesswing's opinions "little weight" because each psychologist examined Plaintiff on only one occasion and their opinions were "inconsistent with other opinions of record" and "inconsistent with [Plaintiff]'s long work history, work activities since the alleged onset date, and activities of daily living such as driving, shopping, going out to eat, and attending sporting events." *Id.* at 25.

The Regulations are clear that in most cases, an ALJ should assign more weight to examining sources than non-examining consultants. *See* 20 C.F.R. § 404.1527(c)(1). The fact that Drs. Greenberg, Lazzaro and Lesswing each examined Plaintiff on only one occasion does not provide the ALJ with a valid reason for rejecting their assessments in favor of those of Drs. Putney and Polizos, who did not examine Plaintiff at all. Moreover, Drs. Lazzaro and Lesswing each presented substantial relevant evidence to support their opinions, including results from standard psychological tests they administered to Plaintiff, which the ALJ ought to have considered in weighing their opinions. *See id.* at § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Commissioner] will give that opinion.").

Further, the ALJ's additional reasons for assigning the opinions of Drs. Lazzaro and Lesswing "little weight" are not supported by the record. The opinions of Drs. Lazzaro and Lesswing are consistent with each other, as both examining sources concluded that Plaintiff suffered from anxiety, depression, and personality impairments that interfere with his ability to interact with and relate to others. *See* R. at 479-83, 487-92. These opinions are also consistent with the opinion of Dr. Greenberg, who concluded that Plaintiff suffered from dysthymic disorder, and the opinions of the mental health professionals who treated and examined Plaintiff in the 1990s. *See id.* at 438-41, 450. The only "opinions of record" that are inconsistent with Drs. Lazzaro and Lesswing's opinions are those of the non-examining consultants. *See id.* at 451-67, 473-77. Although the ALJ is correct that Dr. Ted Triana, Plaintiff's treating primary care physician, "repeatedly noted [Plaintiff] denying any psychiatric symptoms," Dr. Triana did not perform any psychiatric evaluation of Plaintiff or offer an opinion as to Plaintiff's psychiatric

13

condition. *See id.* at 21, 498-526. Drs. Lazzaro and Lesswing's opinions cannot, therefore, be considered inconsistent with the opinion of Dr. Triana.

Nor are Drs. Lazzaro and Lesswing's opinions inconsistent with Plaintiff's work history or recent work activities. The ALJ noted that Plaintiff "has a great work history" because Plaintiff's earnings were consistently above the substantial gainful activity level from 1996 to 2007. *Id.* at 24. This characterization of Plaintiff's work history ignores that Plaintiff has had high job turnover, holding approximately twenty jobs in the past fifteen years, due in part to difficulty working with supervisors and complaints over Plaintiff's behavior. *See id.* at 50, 53-55, 75-76, 314-15. This evidence is consistent with Drs. Lazzaro and Lesswing's opinions regarding Plaintiff's limitations in interacting with others. Plaintiff's ability to deliver newspapers and newspaper inserts since his alleged disability onset date is also consistent with Drs. Lazzaro and Lesswing's opinions, as the paper routes do not require Plaintiff to have direct interaction with supervisors, coworkers, or the general public. Finally, Plaintiff's ability to drive, shop under certain limited circumstances such as taking brief trips to a convenience store, dine out, and occasionally attend sporting events with his family members are not inconsistent with Drs. Lazzaro and Lesswing's opinions as to Plaintiff's ability to interact appropriately with others in a work setting on a consistent basis. *See id.* at 296-98, 311, 321, 326-28. Similarly, although the ALJ noted that Plaintiff "reported no problems with personal care," *id.* at 22, two examining medical sources took note of Plaintiff's poor hygiene or foul breath, and Plaintiff's brother reported that Plaintiff frequently has unclean clothes, unkept hair, and needs reminders to take care of his personal needs and grooming, *see id.* at 326-27, 443, 488. Therefore, the Court finds that the ALJ's decision to afford "little weight" to Drs. Lazzaro and Lesswing's opinions is not supported by substantial evidence.

14

Additionally, the Court finds that the ALJ erred in assigning Drs. Putney and Polizos's opinions "significant weight." The ALJ indicated that he assigned such weight in part because the State experts based their reviews on Plaintiff's "longitudinal record." *Id.* at 24. However, Drs. Putney and Polizos's reports do not indicate what records they reviewed. *See id.* at 451-68, 473-77. Furthermore, Dr. Putney completed her assessment on September 10, 2007, while Dr. Polizos completed his review of Dr. Putney's assessment on November 11, 2007. *See id.* at 467, 477. Dr. Lazzaro did not examine Plaintiff until August 2008, while Dr. Lesswing evaluated Plaintiff in June 2010. *See id.* at 480, 487. Thus, Drs. Putney and Polizos were unable to review the opinions of Drs. Lazzaro and Lesswing in evaluating Plaintiff's limitations. Morever, as discussed above, Plaintiff's work history and activities of daily living do not support the conclusion that Plaintiff's abilities related to social interaction and adaptation are not significantly limited. *See id.* at 466.

Based on the foregoing, the Court finds that the ALJ erred in adopting Drs. Putney and Polizos's opinions over the opinions of Plaintiff's examining sources. Thus, the Court is unable to find that the ALJ's determinations of the severity of Plaintiff's psychological impairments and RFC are supported by substantial evidence. The Court therefore finds that Plaintiff's claims must be remanded to the Commissioner to evaluate the medical opinions of Plaintiff's examining psychologists and non-examining consultants in accordance with the Regulations.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

15

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision denying disability benefits is **VACATED** and this matter is **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[2] for further proceedings; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  December 24, 2014
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[2] Sentence four of § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).